UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK FATUM,

       Plaintiff,                                      Hon. Janet T. Neff

v.                                                                   Case No. 1:10-CV-302

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

### REPORT AND RECOMMENDATION

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.  Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 39 years of age on the date of the ALJ's decision. (Tr. 15, 93). Plaintiff successfully completed high school, as well as "several years of college classes," and worked previously as a plant superintendent. (Tr. 14, 20, 131, 137-41).

Plaintiff applied for benefits on January 30, 2006, alleging that he had been disabled since September 20, 2005, due to complications from hernia surgery. (Tr. 93-101, 130). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 39-92). On June 23, 2009, Plaintiff appeared before ALJ Thomas Walters, with testimony being offered by Plaintiff and vocational expert, Normal Abeles. (Tr. 16-38). In a written decision dated July 28, 2009, the ALJ determined that Plaintiff was not disabled. (Tr. 8-15). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-4). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2009. (Tr. 8). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **RELEVANT MEDICAL HISTORY**

On December 3, 2004, Plaintiff was examined by Dr. Erika Elsing. (Tr. 189-90). Plaintiff reported that "he has a lot of anxiety and stress at work" and "has not been doing very well." (Tr. 189). Plaintiff stated "that he would like to consider disability for his stress." (Tr. 190). The doctor concluded that this was not appropriate and instead increased Plaintiff's Xanax dosage. (Tr. 189-90).

X-rays of Plaintiff's chest, taken on January 27, 2005, revealed no evidence of chest pathology. (Tr. 193). On February 6, 2005, Plaintiff participated in a CT scan of his abdomen the results of which revealed the following:

> With exception of a probable fluid filled structure in the subcutaneous tissue interior abdomen, CT scan of the abdomen and pelvis revealed normal bindings. This is a new finding compared to a previous CT scan done on 9-18-05. The exact etiology could not be determined and may represent residual hematoma or a phlegmon from previous surgery. Needle aspiration may be helpful for further evaluation.

(Tr. 226).

On April 28, 2005, Plaintiff was informed that he would be "permanently laid off effective May 1, 2005," from his position with Leon Plastics Inc. "due to a reduction-in-force." (Tr. 119-20).

On May 31, 2005, Plaintiff was examined by Dr. Elsing. (Tr. 182-83). Plaintiff reported that "he is doing well" and that "the hernia pain is decreasing." (Tr. 182). X-rays of Plaintiff's cervical spine, taken on August 15, 2005, revealed "congenital fusion of C2-C3," but "the remainder of [Plaintiff's] cervical [spine] appeared normal." (Tr. 236).

On September 18, 2005, Plaintiff participated in a CT scan of his abdomen and pelvis the results of which revealed a "small ventral abdominal hernia." (Tr. 227-28). X-rays of Plaintiff's abdomen and chest, taken the same day, were "normal." (Tr. 229). On December 20, 2005, Plaintiff underwent excision and reconstruction surgery to treat three "non-healing cutaneous ulcers in his abdominal wall." (Tr. 199). Treatment notes dated January 4, 2006 indicate that Plaintiff was experiencing an infection of his abdominal wound site. (Tr. 258).

On February 22, 2006, Plaintiff reported that he was experiencing "a flare up of his arthritis pain in his hands, knees and left elbow." (Tr. 258). Plaintiff reported that he was not taking any medication for this problem, however. (Tr. 258). Plaintiff was given samples of Celebrex. (Tr. 258). It was also noted that Plaintiff's "abdominal wound continues to heal slowly." (Tr. 258).

On June 14, 2006, Plaintiff was examined by Dr. Jonathan Dennis. (Tr. 256). With respect to his abdominal wound, Plaintiff reported that the antibiotics that he had been taking "for about two months...helped a great deal." (Tr. 256). However, when Plaintiff completed taking the antibiotics, the area in question "almost immediately...started to drain." (Tr. 256). Plaintiff was given another prescription for antibiotics. (Tr. 256).

On June 29, 2006, Plaintiff reported that Celebrex "worked" in controlling his arthritis symptoms. (Tr. 256).

On June 30, 2006, Plaintiff participated in a consultive examination conducted by Jeffery Kieliszewski, PhD. (Tr. 262-65). Plaintiff reported he was seeking disability benefits due to the abdominal difficulties he was experiencing. (Tr. 262). The results of a mental status

examination were unremarkable. (Tr. 263-64). Plaintiff was diagnosed with major depressive disorder, recurrent, mild and his GAF score was rated as 58.[1] (Tr. 265).

Treatment notes dated September 14, 2006, reveal that Plaintiff "has no evidence of significant coronary artery disease or cardiomyopathy." (Tr. 354).

On October 19, 2006, Plaintiff reported to the Emergency Room "with concerns about feeling depressed." (Tr. 359-60). Plaintiff reported that he was "somewhat depressed" about his abdominal wound, but denied experiencing any abdominal pain. (Tr. 359). Plaintiff rated "his symptoms as 5/10 in severity." (Tr. 359). An examination of Plaintiff's abdomen revealed "no tenderness with palpation to the entire abdomen." (Tr. 360). Plaintiff's abdominal wound was noted to be "healing" with "no active drainage." (Tr. 360). Plaintiff voluntarily admitted himself to the hospital. (Tr. 356). Plaintiff was discharged four days later at which point he was diagnosed with major depressive disorder. (Tr. 356-57).

X-rays of Plaintiff's cervical spine, taken on October 11, 2007, revealed "congenital fusion of C2-3," and "minimal dorsal spondylosis at C3-4 of questionable significance," but "otherwise negative cervical spine." (Tr. 319).

On October 23, 2007, Plaintiff was examined by Dr. James Lively. (Tr. 315-16). The doctor noted that Plaintiff's abdominal wounds "healed earlier this year and now [Plaintiff] has developed an increasingly inflamed area in the left axilla." (Tr. 315). An examination of Plaintiff's abdomen revealed "a huge, broad scar in the upper abdominal midline with no open area." (Tr. 316).

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 58 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

The doctor observed "no abdominal tenderness" and Plaintiff's "bowel sounds were normal." (Tr. 316). The doctor drained the abscess in Plaintiff's armpit. (Tr. 316). On October 29, 2007, Dr. Lively reported that "the area of incision and drainage of the left axillary abscess is healing very well" and "the original wound is almost closed." (Tr. 317). The doctor further noted that further antibiotics were not required. (Tr. 317).

On July 9, 2008, Plaintiff participated in an MRI examination of his left shoulder the results of which were "unremarkable" with "no rotator cuff tear or significant tendinopathy." (Tr. 435).

On August 26, 2008, Plaintiff was examined by Dr. Aleksandar Tosic. (Tr. 331). Plaintiff reported that in March 2008 he "fell on ice landing on the left shoulder" and has since experienced "significant pain in the left shoulder with difficulty with range of motion." (Tr. 331). An examination of Plaintiff's left upper extremity revealed that it was "neurovascularly intact." (Tr. 331). Plaintiff exhibited "minimal pain to palpation of the joint," but exhibited "significant pain" on motion of the shoulder. (Tr. 331). X-rays of Plaintiff's left shoulder revealed "normal anatomy." (Tr. 331). Plaintiff was given an injection to treat the pain and instructed to participate in physical therapy. (Tr. 331).

X-rays of Plaintiff's chest and abdomen, taken on September 10, 2008, revealed "no definite acute findings." (Tr. 434). On October 7, 2008, Plaintiff participated in an electrocardiogram examination the results of which were "normal." (Tr. 584). Treatment notes dated October 8, 2008, indicate that Plaintiff "has been doing well with respect to his cardiac status" with no chest pain or shortness of breath. (Tr. 348).

On October 10, 2008, Plaintiff participated in a CT scan of his abdomen and pelvis the results of which revealed "small residual anterior abdominal wall fluid collection without evidence of a recurrent hernia." (Tr. 431). The results of this examination revealed that Plaintiff's abdomen and pelvis were "otherwise stable and unremarkable." (Tr. 431).

Treatment notes dated October 27, 2008, indicate that Plaintiff recently participated in a cardiac stress test the results of which revealed "no evidence of significant ischemia or evidence of heart attack." (Tr. 347).

Plaintiff's left shoulder did not respond to conservative treatment and on November 14, 2008, Plaintiff underwent arthroscopic surgery to treat impingement syndrome. (Tr. 330). On December 29, 2008, Plaintiff reported to Dr. Tosic that his left shoulder "is doing very good" and that "he has only minimal discomfort in the joint." (Tr. 328). Plaintiff reported that "he is using his arm for most of his normal activities." (Tr. 328). Dr. Tosic reported that Plaintiff "has good range of motion of the left shoulder." (Tr. 328).

At the administrative hearing, Plaintiff testified that he was unable to work due to fibromyalgia. (Tr. 25). Plaintiff reported that he experiences "constant" pain "all over" his body. (Tr. 25). Plaintiff reported that he was unable to sit for longer than "about 15 minutes." (Tr. 26). Plaintiff reported that he can stand for 15 to 20 minutes and walk 100 to 150 feet. (Tr. 26). Plaintiff also reported that he was unable to use his left shoulder. (Tr. 27). Plaintiff reported that he could not lift more than 10 pounds. (Tr. 27). Plaintiff testified that he was experiencing sleep apnea which despite using a CPAP machine, was "still coming through and choking me." (Tr. 27). Plaintiff reported that, as a result, he has to take "at least four to five" naps during the day. (Tr. 27-28). Plaintiff reported that he "can't turn [his] head." (Tr. 28). Plaintiff reported that he suffers migraine

headaches "once a week" which result in him "having to be down in bed" for "a few days."  (Tr. 28).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffers from: (1) obesity, (2) fibromyalgia, (3) hernia, (4) degenerative disc disease, (5) obstructive sleep apnea, (6) left shoulder injury, (7) visual impairment, (8) history of cardiac catheterization, and (9) depression, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 10-11).  The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations.  (Tr. 11-15).  Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he can perform only unskilled work; (2) he requires an option to alternate between sitting and standing every 30-60 minutes; (3) he cannot engage in repetitive bending, twisting, or turning; (4) he cannot climb, crawl, squat, or kneel; (5) he is unable to walk for distances that exceed 100 feet; (6) he cannot work around machinery or unprotected heights; and (7) he cannot engage in more than limited contact with co-workers or the general public. (Tr. 11).

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Norman Abeles.

The vocational expert testified that there existed approximately 11,200 jobs in the "lower half of the peninsula" which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 35-36). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

      a.    The ALJ Properly Discounted Plaintiff's Subjective Allegations

As previously noted, Plaintiff testified at the administrative hearing that he was unable to work because he suffered various work-preclusive limitations. The ALJ concluded that

Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 12). Plaintiff asserts that the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the

alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ recognized, the medical evidence does not support Plaintiff's allegations of extreme pain and limitation. Plaintiff's arthritis symptoms were well controlled with medication. Diagnostic testing revealed no evidence of significant coronary artery disease or cardiomyopathy. The results of an electrocardiogram examination were normal. Following shoulder surgery, Plaintiff exhibited "good range of motion" and was able to use his shoulder "for most of his normal activities." Moreover, as Plaintiff acknowledges he did not stop working due to his alleged impairments, but instead as a

result of a "reduction-in-force." In sum, the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

        b.        The ALJ's RFC Determination is not Supported by Substantial Evidence

As detailed above, the ALJ assessed Plaintiff's residual functional capacity and concluded that Plaintiff retains the ability to perform a limited range of sedentary work. Plaintiff argues that the ALJ's RFC determination failed to account for his vision impairment.

The ALJ expressly found that Plaintiff suffers from an unspecified "vision impairment." The medical record indicates that Plaintiff suffers from a congenital impairment to his right eye. (Tr. 362, 514). As a result of this impairment, Plaintiff has peripheral vision only in his right eye. (Tr. 362, 514). There is also evidence that Plaintiff experiences (or has experienced) blurred vision and "lazy eye." (Tr. 633, 637). The Court recognizes that the record contains a dearth of evidence concerning Plaintiff's eye impairment. Nevertheless, the ALJ found that Plaintiff suffers from a severe vision impairment. A "severe" impairment is defined as an impairment that "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The capacity for sight is considered a basic work activity. *See* 20 C.F.R. § 404.1521(b). Despite concluding that Plaintiff suffers from a vision impairment which significantly limits his ability to perform basic work activities, the ALJ failed to account for such in his RFC determination. Accordingly, the ALJ's RFC determination is not supported by substantial evidence.

The vocational expert testified that given Plaintiff's RFC, there existed a significant number of jobs which Plaintiff could perform despite such limitations. However, the ALJ's RFC determination is not supported by substantial evidence. Because the vocational expert's testimony

was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist *compelling* evidence that Plaintiff is disabled. As discussed herein, resolution of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The undersigned recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings.

        c.     Plaintiff's Date Last Insured

In his decision, the ALJ determined that Plaintiff's insured status, for purposes of DIB benefits, expired on December 31, 2009. (Tr. 10). Plaintiff asserts that this is in error, as his insured status did not expire until December 31, 2010. Defendant has failed to address this particular issue.

Under the Social Security Act there exist two separate and distinct programs pursuant to which a disabled individual may obtain benefits. Title II of the Act creates the Disability Insurance Benefit (DIB) program whereas Title XVI of the Act creates the Supplemental Security Income (SSI) program. To be eligible for DIB, a claimant must be "insured for disability insurance

benefits," and establish that he became disabled prior to the expiration of his insured status. *See, e.g., Tillackdharry v. Barnhart*, 2006 WL 903191 at *4 (S.D.N.Y., April 10, 2006) (citing 42 U.S.C. § 423). A claimant's "insured status" is calculated using a system of "quarters of coverage" ("QC"), with each quarter defined as three calendar months. *See Tillackdharry*, 2006 WL 903191 at *4 (citing 42 U.S.C. § 423(c)(1)(B) and 20 C.F.R. § 404.102). A claimant is credited with quarters of coverage based on wages or self-employment income earned during the calendar years he has worked. *See Tillackdharry*, 2006 WL 903191 at *4 (citing 20 C.F.R. § 404.130). To be eligible for DIB benefits, a claimant must have accumulated at least 20 quarters of coverage during the 40 quarter (ten year) period ending with the quarter in which benefits are sought. *See Tillackdharry*, 2006 WL 903191 at *4 (citing 20 C.F.R. § 404.130(b)).

As Plaintiff notes, documentary evidence in the administrative record indicates that his insured status extended through December 31, 2010. (Tr. 117). Moreover, evidence in the record concerning Plaintiff's work and earnings history suggests that Plaintiff obtained sufficient quarters of coverage to remain insured, for DIB purposes, at least through December 31, 2010. (Tr. 118). However, the record does not contain information regarding whether Plaintiff earned any quarters of coverage on 2009 or 2010, which would extend Plaintiff's date last insured beyond December 31, 2010. In the absence of such information, the Court cannot definitely determine the date on which Plaintiff's insured status expired. It does appear, however, from the present record that the ALJ's calculation of Plaintiff's date last insured is in error.

Accordingly, the Court finds that the ALJ's calculation of Plaintiff's date last insured is not supported by substantial evidence. The Court recommends, therefore, that on remand the Commissioner properly calculate Plaintiff's date last insured.

    d.  Plaintiff is not Entitled to a Sentence Six Remand

  As part of his request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 649-64). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. (Tr. 1-4). This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

  If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case (pursuant to Sentence Six of 42 U.S.C. § 405(g)) for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

  The evidence in question reveals that Plaintiff was participating in out-patient mental health counseling. It also reveals that on September 10, 2009, Plaintiff participated in nerve conduction studies of his upper and lower extremities the results of which were "within normal limits." It is not reasonable to assert that consideration of this material by the ALJ would have led to a different result. Accordingly, the Court is precluded from considering this evidence and,

furthermore, there exists no basis for remanding this matter pursuant to Sentence Six for its further consideration.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence.  Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  August 26, 2011                                  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge